IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MAGGIE TSAVARIS,<br><br>    Plaintiff,<br><br>    v.<br><br>SAVANNAH LAW SCHOOL, LLC, a Georgia Limited Liability Company; JOHN MARSHALL LAW SCHOOL, LLC, a Delaware Limited Liability Company; JOHN MARSHALL LAW SCHOOL, a Georgia Corporation; JMLS 1422, LLC, a Delaware Limited Liability Company; MICHAEL C. MARKOVITZ; and MALCOLM MORRIS,<br><br>    Defendants. | CIVIL ACTION NO.: 4:18-cv-125 |

**O R D E R**

This matter is before the Court on Plaintiff Maggie Tsavaris' Motion for Review and Exclusion of Costs, (doc. 90), and her Motion for Continuance of Taxation of Costs Statutorily Authorized, (doc. 91). Plaintiff filed suit against Defendants Savannah Law School, LLC ("SLS"); John Marshall Law School, LLC; John Marshall Law School, a Georgia Corporation; JMLS 1422, LLC; Michael C. Markovitz; and Malcolm Morris, based on allegations surrounding the decision to not renew her employment contract at SLS. (See doc. 14.) She asserted that all Defendants besides Markovitz and Morris discriminated against her on account of her age, sex, and disability in violation of the Age Discrimination in Employment Act of 1967 (ADEA), Title VII of Civil Rights Act of 1964 (Title VII), and the Americans with Disabilities Act (ADA), respectively. (Id. at pp. 18–27.) She also asserted state law claims of defamation, tortious interference with business relations, and breach of contract against all Defendants. (Id. at pp. 27–33.) After the Defendants

moved for summary judgment and all parties thoroughly briefed the issues, the Court granted summary judgment to the Defendants on the federal claims and declined to exercise its supplemental jurisdiction over the state law claims. (Doc. 82.) Following the Court's grant of summary judgment, the Defendants filed a Bill of Costs seeking to recover $10,356.09 in taxable costs they incurred during the suit. (Doc. 88.) Plaintiff then filed her Motion for Review and Exclusion of Costs, "object[ing] to all costs being taxed" against her. (Doc. 90, p. 2.) She also filed a Motion for Continuance of Taxation of Costs Statutorily Authorized until the conclusion of her appeal. (Doc. 91.) For the following reasons and in the manner delineated below, the Court **GRANTS** Plaintiff's Motion for Review and Exclusion of Costs. (Doc. 90.) The Court also **GRANTS** Plaintiff's Motion for Continuance of Taxation of Costs Statutorily Authorized. (Doc. 91.)

## BACKGROUND

Plaintiff is a former law professor at SLS. (Doc. 63-2, p. 1.) On January 31, 2017, SLS's dean, Malcom Morris, told Plaintiff that he was not going to renew her contract for the next academic year. (Doc. 54-50, p. 1.) After her termination, Plaintiff filed suit against the Defendants, alleging violations of the ADEA, Title VII, and the ADA, as well as state law claims of defamation, tortious interference with business relations, and breach of contract. (Doc. 14, pp. 18–33.)

During the discovery phase of litigation, Defendants paid a third-party vendor, Logikcull, to host documents pertaining to the case on Logikcull's data platform. (Doc. 88-2, pp. 1–12; doc. 88-1, pp. 5–6.) Defendants took the depositions of Plaintiff and Elizabeth Berenguer, (docs. 54-30, 54-32), and Plaintiff deposed Morris and Markovitz, (docs. 54-34, 56-10). Three of these individuals (Plaintiff, Morris and Markovitz) were parties to the suit; Berenguer was the SLS

employee who had hired Plaintiff to teach at SLS, but she no longer worked there at the time of Plaintiff's termination. (Docs. 54-32, pp. 2, 7.) The day before Defendants planned to depose Plaintiff, they served her attorneys with a notice that they would be having her deposition videographically recorded. (Doc. 90-1, p. 2.) Nothing in the record indicates that Plaintiff objected to this notice. Finally, during the discovery period, Defendants also served subpoenas on Indiana University McKinney School of Law ("Indiana"), Florida International University College of Law ("FIU"), and University of Miami School of Law ("Miami") to collect information about Plaintiff's employment at those institutions. (See doc. 88-2, p. 14.)

After discovery concluded, Defendants filed their Motions for Summary Judgment. (Docs. 54, 55, 56.) The Court ultimately granted Defendants summary judgment on Plaintiff's federal law discrimination claims and then declined to exercise its supplemental jurisdiction over the remaining state law claims. (Doc. 82.) The Court entered judgment in favor of Defendants and against Plaintiff on the federal claims on March 17, 2020. (Doc. 83.) Defendants then filed a Bill of Costs seeking to tax Plaintiff for several of their litigation costs. (Doc. 88.) According to their "Memorandum of Law in Support of Defendants' Bill of Costs[,]" Defendants seek $6,609.39 for "Stenographic Fees," which includes fees for transcripts of the depositions of Berenguer, Morris, Plaintiff, and Markovitz and for "a video copy of three of those depositions." (Doc. 88-1, pp. 3–4.) Defendants also request $660.00 for "Service of Process Fees" which includes the costs of serving subpoenas on FIU, Indiana, and Miami. (Id. at pp. 4–5.) Defendants next seek $3,025.00 for "document-hosting costs, which represents fees paid to third-party vendor Logikcull." (Id. at pp. 5–6.) Finally, Defendants assert that they spent $61.70 on fees securing documents from the PACER system, which should be taxed to Plaintiff.[1] (Id. at p. 6.)

---

[1] "The Public Access to Court Electronic Records system ("PACER") is an electronic system that allows registered users to access judicial records online from federal appellate, district, and bankruptcy courts."

Plaintiff subsequently filed her Motion for Review and Exclusion of Costs, arguing that Defendants' asserted costs should not or cannot be taxed against her for a variety of reasons. (Doc. 90.) Plaintiff also requests that the Court consider her financial status in its decision regarding costs. (Id. at pp. 13–14.) She explains that she has no current income and does not have a 401(k) or own real property, and that while she does have "modest savings" she has several monthly expenses. (Doc. 90-2, p. 3; doc. 97-1, p. 2.) Plaintiff also filed a Motion for Continuance of Taxation of Costs Statutorily Authorized. (Doc. 91.) In that Motion, she requests that the Court grant a continuance on the taxation of the remaining costs that Defendants could seek against her until the United States Court of Appeals for the Eleventh Circuit rules on her appeal of the Court's summary judgment order. (Id. at pp. 1–2.) Defendants filed Responses to both Motions, (docs. 94, 95), and Plaintiff filed a Reply, (doc. 97).

## DISCUSSION

Defendants seek to recover $10,356.09 in alleged taxable costs they incurred during the suit. (Doc. 88.) Under Federal Rule of Civil Procedure 54(d)(1), a court may award costs to the prevailing party[2] in an action. Fed. R. Civ. P. 54(d)(1). In addition, 28 U.S.C. § 1920 "enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 441–42 (1987). "When challenging whether costs are properly taxable, the burden lies with the losing party, unless the

---

Theodore D'Apuzzo, P.A. v. United States, No. 16-62769-CIV-Scola, 2018 WL 2688760, at *1 (S.D. Fla. Apr. 13, 2018).

[2] The Court granted Defendants summary judgment as to Plaintiff's federal claims and then declined to exercise its supplemental jurisdiction over the remaining state law claims. (Doc. 82.) This is sufficient for Defendants to be considered prevailing parties in this action. See Head v. Medford, 62 F.3d 351, 355 (11th Cir. 1995) ("That the district court declined to exercise its supplemental jurisdiction under 28 U.S.C. § 1367 and dismissed all of plaintiff's remaining state law claims, does not impair the fact that, as far as the federal case was concerned, defendants prevailed.").

4

knowledge regarding the proposed cost is a matter within the exclusive knowledge of the prevailing party." Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt. Inc., 385 F. Supp. 2d 1272, 1288 (M.D. Fla. 2005). Plaintiff argues that several of the costs that Defendants seek to tax against her are not authorized by the statute, (doc. 90, pp. 3–13), and, as to those costs that are statutorily authorized, she asserts that the Court should not tax those costs against due to her financial status, (id. at pp. 13–14). She also argues that the Court should issue a continuance as to the statutorily authorized costs until the resolution of her appeal. (Id. at p. 13; doc. 91.) The Court will address these arguments in turn.

I.  **Statutorily Authorized Costs**

Plaintiff argues that 28 U.S.C. § 1920 does not permit taxation of several of the costs that Defendants seek to collect from her. (Doc. 90, pp. 3–13.) Specifically, she claims that neither the statute nor any caselaw permits her to be taxed for Defendants' document hosting expenses, (id. at pp. 3–7); that Defendants cannot make the showing necessary to require her to pay for Defendants' costs associated with any of the videotaped depositions or with the stenographically-recorded deposition of Elizabeth Berenguer, (id. at pp. 7–10, 12–13); and that the statute does not authorize taxing her for Defendants' PACER fees or for their expenses spent on serving summonses and subpoenas, (id. at p. 10–11).

A.  **Document Hosting Costs**

In their Memorandum in support, Defendants "request $3,025[.00] in document-hosting costs, which represents fees paid to third-party vendor Logikcull." (Doc. 88-1, p. 5.) Plaintiff asserts that costs for hosting electronic documents do not fall within the parameters of 28 U.S.C. § 1920. (Doc. 90, pp. 3–7.) While a prevailing party may be awarded fees "for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use

5

in the case," 28 U.S.C. § 1920(4), the Court is not aware of any case where the Eleventh Circuit has expressly addressed whether electronic document hosting costs can be taxed against a losing party. However, several district courts within this Circuit have determined that these costs cannot be taxed. See, e.g., Nail v. Shipp, No. 17-cv-00195-KD-B, 2020 WL 1670459, at *12 (S.D. Ala. April 3, 2020) ("Indeed, creating an electronic database/compilation or enhanced digital files 'goes well beyond the statutory intent' for taxable digital copies.") (quoting Finnerty v. Stiefel Labs., Inc., 900 F. Supp. 2d 1317, 1321–22 (S.D. Fla. 2012)); Abbott Point of Care, Inc. v. Epocal, Inc., No. CV-08-S-543-NE, 2012 WL 7810970, at *3 (N.D. Ala. Nov. 5, 2012) ("[A]lmost all district courts considering the issue, including district courts within the Eleventh Circuit, have held that the costs of creating and maintaining an electronic discovery database are not recoverable under § 1920 . . . ."). Defendants argue this case is distinguishable from the cases where taxation was denied because, here, one of the reasons they hosted information on Logikcull was so that they could perform specific Boolean searches that Plaintiff had requested. (Doc. 88-1, p. 5.) However, Defendants fail to cite any cases from within this circuit indicating that this difference would or should bring their costs within the statutory confines of 28 U.S.C. § 1920.[3] The Court's own

---

[3] Defendants cite one case from the Central District of California where a district court granted the defendant's request for "costs she incurred by retaining LogikCull [sic] online document management services." Baker v. Baker, No. 16-cv-08931 VAP (JPRx), 2018 WL 6190597, at *16 (C.D. Cal. Aug. 31, 2018). That case is distinguishable, however, as the defendant's request for costs was made pursuant to 17 U.S.C. § 505, not 28 U.S.C. §1920, as here. Id. The distinction is important because 17 U.S.C. § 505, which applies only in copyright infringement cases, states that a court may, in its discretion, allow "the recovery of full costs." 17 U.S.C. § 505. Critically, in Baker, the district court relied explicitly on the United States Court of Appeals for the Ninth Circuit's then-current interpretation of that statute as permitting costs *beyond* those listed in 28 U.S.C. § 1920. Id. (citing, *inter alia*, Oracle USA, Inc. v. Rimini St., Inc., 879 F.3d 948, 965–66 (9th Cir. 2018) ("[B]ecause 17 U.S.C. § 505 permits the award of full costs, the award of costs under § 505 is not limited to the categories of costs described in 28 U.S.C. § 1920.")). Notably, shortly after the Baker order was entered, the United States Supreme Court rejected the Ninth Circuit's interpretation of 17 U.S.C. § 505 and reversed the circuit court's decision in Oracle USA, holding instead that 17 U.S.C § 505 does *not* authorize awards of costs beyond the six categories enumerated in 28 U.S.C. § 1920. See Rimini St., Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 881 (2019). Thus, even assuming the Baker case was somehow be applicable to the case at hand, that court's basis for awarding the Logikcull costs is no longer sound.

review of the caselaw supports the opposite conclusion. See, e.g., Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp., 2 F. Supp. 3d 1306, 1318 (N.D. Ga. 2014) ("But the cost of creating a dynamic, indexed and searchable database is nothing more than an efficient, convenient, modern-day version of paper document review. It cannot be taxed."). While this Court is not bound by another district courts' decisions, the Court finds the Akanthos Capital Management court's reasoning to be persuasive, especially in light of Defendants' failure to cite authority supporting their proposed interpretation of 28 U.S.C. § 1920. Accordingly, Defendants cannot tax Plaintiff for the fees they spent hosting documents on Logikcull.

While Defendants cannot recover fees for hosting information on an electronic database, they can recover for the creation of digital *copies* of documents. See, e.g., Finnerty, 900 F. Supp. 2d at 1322 ("A prevailing party may tax the costs of making digital copies, but 'Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable.'") (quoting Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 169 (3d Cir. 2012)). The Logikcull invoice, a copy of which was attached to Defendants' Bill of Costs, shows a charge of $120.57 for "Upload Processing," which—pursuant to the ordinary meaning of the term "upload" in this context—involved the conversion of documents into a specific electronic format so that they could be housed in Logikcull's database. (Doc. 88-2, p. 1.) This cost is taxable. See Akanthos Capital Mgmt., LLC, 2 F. Supp. 3d at 1318 ("The cost of converting ESI from a native format to TIFF may be taxable as a modern analogue to photocopying paper documents. Other tasks, such as digitizing paper documents, may also be taxable.") (citations omitted). However, the remainder of the expenses on the Logikcull invoices are only for "Project Hosting." (Doc. 88-2, pp. 1–12.) Defendants have not provided the Court with a basis for taxing these costs; for instance, they have not explained whether or how these fees are connected to making copies, much

less have they described why—to the extent they could be deemed copying or related to copying—they were necessary during the litigation. See, e.g., Monelus v. Tocodrian, Inc., 609 F. Supp. 2d 1328, 1335 (S.D. Fla. 2009) ("[G]eneral copying costs without further description are not recoverable.") (citing Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996)); Lee v. Am. Eagle Airlines, Inc., 93 F. Supp. 2d 1322, 1335 (S.D. Fla. 2000) ("Plaintiff still bears the burden of submitting a request for expenses that would enable the Court to determine what expenses were incurred and whether Plaintiff is entitled to them."). For all these reasons, the Court **GRANTS** Plaintiff's Motion for Exclusion of Costs as to Defendants' expenses for hosting documents on Logikcull. (Doc. 90.) However, the Defendants can recover $120.57 for "upload processing."

### B.     Deposition Costs

According to their Memorandum, Defendants seek "an award of $6,609.39 for the cost of obtaining one copy of the stenographic deposition[s] of four witnesses in this case and a video copy of three of those depositions." (Doc. 88-1, p. 3.) They identify the four witnesses as Plaintiff, Elizabeth Berenguer, Malcolm Morris, and Michael Markovitz, and they provide a chart showing the amount they claim as the "stenographic fee[]" for each individual's deposition. (Id. at p. 4.) They do not, however, provide a similar chart for the three video-tape fees for which they seek reimbursement. (See id.) In fact, they do not even state exactly whose depositions—other than Plaintiff's—they purchased video recordings of. The best the Court can do is deduce from a statement in Defendants' Response brief—that Defendants noticed Berenguer's deposition "only . . . as a stenographic deposition," (doc. 95, p. 5)—that, to the contrary, Morris and Markovitz's depositions were *not* "only . . . stenographic deposition[s]" but were also video recorded and that Defendants are seeking reimbursement for video tapes of their depositions (in addition to Plaintiff's deposition).

Further frustrating matters, however, is Defendants' failure to clearly state or show the amount they were charged for two of the three video recordings. They provide copies of invoices sent to them from court reporting services related to the depositions of Plaintiff, Morris, and Markovitz. (See doc. 88-2.) (There is no invoice related to the deposition of Berenguer.) While the invoice for Plaintiff's deposition is itemized to show a specific amount of fees related to videotaping, the invoices for Morris and Markovitz's depositions do not even indicate that those depositions were video recorded, nor do they indicate that Defendants had requested and were charged for a video copy; and, even assuming each invoiced amount included a charge for a video copy, the Court has no way of knowing which portion of the amount billed was for the stenographic transcript and which portion was for the video tape. (See doc. 88-2, pp. 15–16.))

Finally (and most confusing of all), when the Court adds up the costs Defendants claim (in the chart they provided) they incurred for *stenographic* fees for each witness, (doc. 88-1, p. 4), the total is an exact match to the total amount that Defendants repeatedly claim to seek "for the cost of obtaining one copy of the steno-graphic deposition of four witnesses in this case *and a video copy of three of those depositions*," which is $6,609.39. (Id. at pp. 3–4 (emphasis added); see also doc. 95, p. 4.) Notably, the amount of *stenographic* fees that Defendants claim (in their Bill of Costs memorandum) that they incurred for Plaintiff's deposition is the same as the *total* amount they were billed in relation to her deposition, which includes not only a charge for the original and a copy of the transcript (which was only $1,273.50) but also fees for "video services" and other miscellaneous items (which account for $1,612.65 of the total invoiced amount). (Compare doc. 88-1, p. 4 with doc. 88-2, p. 13.) Thus, it is entirely unclear to the Court whether the Defendants' chart was inadvertently mislabeled as a list of "stenographic fees" when it actually includes both the stenographic fees and the videotape fees for which Defendants seek reimbursement, or

9

whether, instead, there are additional amounts (beyond the $6,609.39) that Defendants seek to recover for fees for video recordings. Nonetheless, the Court proceeds with analyzing which, if any, of these fees should be taxed to Plaintiff.

In her Motion, Plaintiff argues that she should not be taxed for any video copies of depositions or for the stenographic copy of Elizabeth Berenguer's deposition. (Doc. 90, pp. 7–10, 12–13.) She apparently does not object to the taxation of costs for the stenographic transcripts of her own deposition or of the depositions of Morris and Markovitz. The Court analyzes each type of recording in turn.

### (1) Video Recordings of Depositions

Under Eleventh Circuit precedent, a prevailing party must meet two requirements in order to tax the costs of video recordings of depositions. Morrison v. Reichhold Chems., Inc., 97 F.3d 460, 465 (11th Cir. 1996). First, a party must have provided notice that the deposition would be recorded by nonstenographic means (or by both stenographic and nonstenographic means), and there must not have been any objection raised at that time by the other party to that method of recordation. Id. Second, the party seeking the taxation of fees must offer an "explanation of why it was necessary to obtain a copy of the video tapes for use in the case." Id.; see also Stalvey v. United States, No. 5:18-cv-00019, 2020 WL 4207118, at *4 (S.D. Ga. July 22, 2020) ("Morrison is somewhat outdated because 28 U.S.C. § 1920 was subsequently amended to include costs for 'electronically recorded transcripts;' however, the reasoning underlying Morrison still applies today.").

As to the first requirement, the evidence here shows that, the day before Plaintiff's own deposition was to occur, Defendants notified her, in accordance with Federal Rule of Civil Procedure Rule 30(b)(3)(B), that "videographic recording [would be] an additional method of

10

recording [her] previously noticed deposition." (Doc. 90-1, p. 2.) Plaintiff does not dispute that she received this notice, but she argues that the notice was not provided well enough in advance of the deposition. (Doc. 90, pp. 7–8.) The Eleventh Circuit has not proscribed a specific amount of time within which such notice must be given in order to foreclose a later award of costs, and Plaintiff has not shown why she needed more time to lodge objections to the video-recording of her deposition. Thus, the evidence indicates that Defendants provided sufficient notice and that Plaintiff did not object, in satisfaction of the first requirement.

As to the second requirement, Defendants argue that video-recording Plaintiff's deposition was necessary because they "were prepared to use portions of her videotaped deposition to impeach her at trial." (Doc. 88-1, p. 4.) Defendants do not, however, explain why it would be necessary for them to have video footage—in addition to a stenographic transcript—of Plaintiff's deposition in order to impeach her at trial. While they cite Katz v. Chevaldina, a decision from another district court, for the proposition that impeachment can be a reason for needing a video copy of a deposition, (doc. 95 (citing Katz v. Chevaldina, 127 F. Supp. 3d 1285, 1294–95 (S.D. Fla. 2015))), the facts in that case are easily distinguishable from the facts at hand. In that case, the prevailing defendant sought to tax the plaintiff for the costs of the video-recording of the plaintiff's deposition. Katz, 127 F. Supp. 3d at 1294. She claimed that "the video could have been useful for impeachment . . . since [p]laintiff's credibility was always at issue in this matter." Id. Notably, however, the plaintiff in Katz had previously been convicted of perjury. Id. The defendant also said a videotaped deposition was necessary because there was "no guarantee that [p]laintiff would have testified at trial." Id. With little analysis, the district court found that this was enough to show that the videotaped deposition was necessary. Id. at 1294–95.

Unlike the plaintiff in Katz, there is no evidence in this case that Plaintiff has ever been convicted of perjury, so the concerns about her credibility at trial are not nearly as strong as they were in Katz. In addition, Defendants have not provided any evidence (much less a reason) that they believed Plaintiff might not testify in the event of a trial, which again distinguishes the facts from Katz. As the Katz court itself acknowledged, the determination of whether a deposition is necessary should be made on a "case-by-case basis." Id. at 1292. Here, Defendants have failed to show on the facts of this case why the possible need to impeach Plaintiff made it necessary for them to have a *video* copy of her deposition. For these reasons, the Court declines to tax Plaintiff with the cost Defendants incurred to obtain of a copy of Plaintiff's video-taped deposition. As a result, the only cost related to Plaintiff's deposition that is taxable to Plaintiff is the $1,273.50 charge reflected on the invoice for the "original and one copy of the deposition," (doc. 88-2, p. 13). See Am. Cas. Co. of Reading, Penn. v. Health Care Indem., Inc., No. 8:07-cv-0421-T-33EAJ, 2009 WL 1456429, *2 (M.D. Fla. May 22, 2009) (applying § 1920(2) and denying reimbursement for mini-transcripts, ASCII disks, and postage and delivery charges of the court reporter); Suarez v. Tremont Towing, Inc., No. 07-21430-CIV, 2008 WL 2955123, *3 (S.D. Fla. Aug. 1, 2008) (court did not allow reimbursement for charges for exhibits, finding such were not taxable costs).

Plaintiff also challenges the taxation of costs for copies of the video recording of two other depositions, which the Court believes to be those of Morris and Markovitz. (Doc. 90, pp. 7–10.) As described above, Defendants have not provided evidence showing exactly how much they paid for the video recordings of Morris and Markovitz's depositions. This failure alone prevents Defendants from recovering these costs. See DeBose v. USF Bd. of Tr., 811 F. App'x 547, 557 (11th Cir. 2020) (per curiam) ("We have held, however, that the party seeking costs and expenses must submit a request that would enable the district court to determine an award.") (citing Loranger

12

v. Stierheim, 10 F.3d 776, 784 (11th Cir. 1994)). In her Motion, Plaintiff provides an additional reason, asserting that "Defendants have offered no reason to demonstrate that the video tapes . . . of any [of the other] depositions were *necessary*, as required by this Eleventh Circuit precedent." (Doc. 90, p. 9 (emphasis original).) In their Response Brief, Defendants do not offer any argument as to why video copies of these two depositions were necessary. (See doc. 95, p. 5.) Thus, the Court finds that Defendant cannot recover the costs for video copies of the remaining two depositions. However, as Plaintiff has not moved to exclude the costs for the stenographic transcripts of Morris and Markovitz's depositions, Defendants may recover an unknown figure of no more $1,339.09 for Morris's stenographic deposition transcript and an unknown figure of no more than $480.15 for Markovitz's stenographic deposition transcript.[4]

### (2) Transcript of Berenguer's Deposition

Plaintiff also moves to exclude the cost Defendants incurred for a stenographic transcript of Elizabeth Berenguer's deposition, which was noticed by Defendants. (Doc. 90, pp. 12–13.) "The question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially necessarily obtained for use in the case." E.E.O.C. v. W&O, Inc., 213 F.3d 600, 620–21 (11th Cir. 2000) (internal citations and quotations omitted). "The district court has discretion in determining whether or not a deposition was necessarily

---

[4] Because the invoices for Morris and Markovitz's depositions are not itemized, the Court cannot determine if some part of the costs listed on those invoices includes fees for video copies. Without this information, the Court is unable to conclude the amount being charged for the *stenographic* copies of each deposition. Normally, the Court would require Defendants to resubmit their Bill of Costs, so the Court could make this determination. See, e.g., Epling v. U.S., 958 F. Supp. 312, 317–318 (W.D. Ky. 1997) ("[Plaintiffs] are granted leave to revise their petition in accordance with 28 U.S.C. § 1920 and to resubmit their amended motion for the consideration of the Court."). However, as described below, the Court, in its discretion, is reducing the costs taxed against Plaintiff to $1,000.00 because of her financial status. (See Discussion Section II, infra.) Because the Court is reducing the costs to $1,000.00, the exact cost of Morris and Markovitz's stenographic depositions is immaterial, so Defendants are not required to resubmit their Bill of Costs.

13

obtained within the meaning of the statute, and the court's determination depends upon a factual evaluation of the case by the district judge in terms of the case's progress in his court." Jeffries v. Ga. Residential Fin. Auth., 90 F.R.D. 62, 63 (N.D. Ga. 1981); see also Ass'n for Disabled Ams., Inc., 385 F. Supp. 2d at 1289 ("District courts have great latitude in determining whether a deposition was 'necessarily obtained' for use in the case.") (quoting Newman v. A. E. Staley Mfg. Co., 648 F.2d 330, 337 (5th Cir. 1981)).

Defendants state that they relied on Berenguer's deposition "in their successful motions for summary judgment, and numerous excerpts of [that] transcript[] were attached as [an] exhibit[] to Defendants' summary judgment papers." (Doc. 88-1, p. 4.) As an initial matter, John Marshall Law School, a Georgia Corporation, and JMLS 1422 did not use Berenguer's transcript in their Motion for Summary Judgment. (See doc. 56.) The remaining Defendants cited Berenguer's deposition in their Motions for Summary Judgment to explain her role in hiring Plaintiff, that she reviewed Plaintiff's teaching performance, and as evidence that Plaintiff made statements which called into question Plaintiff's professionalism. (Doc. 54, pp. 4–6; doc. 55, pp. 4–6.) However, Berenguer's interactions with Plaintiff took place in 2014 or before, and the facts undisputedly show that Berenguer had left SLS by the time of Plaintiff's 2017 termination and, as such, played no role in her termination. (Docs. 54-32, pp. 2, 7, 29.) Nothing in the record indicates that Morris―the decisionmaker in Plaintiff's termination―consulted with Berenguer or relied on her judgment at all when making his decision. Further, as Morris is one of the Defendants in this case, he would have been in a position to inform his attorney that Berenguer had not played a role in Plaintiff's termination before they noticed and took her deposition. Berenguer's deposition's irrelevance is further highlighted by the fact that the Court did not rely on its contents in its summary judgment order. See, e.g., Johnston v. Borders, No. 6:15-cv-936-Orl-40DCI, 2017 WL

1968352, at *5 (M.D. Fla. Apr. 24, 2017) (declining to tax costs of deposition when it did not "appear that [the witness's] deposition transcript was utilized in [d]efendants' successful motion for summary judgment"). It is true that a deposition's use at summary judgment is not necessary for it to be taxable. See Watson v. Lake Cty., 492 F. App'x 991, 996 (11th Cir. 2012) (per curiam) ("Although use of a deposition at trial or in a summary judgment motion tends to show that the deposition was necessarily obtained for use in a case, such a showing is not necessary to be taxable."). However, here, Defendants have offered no other reason for why it was necessary to depose Berenguer, and thus the record only supports that "the deposition costs were merely incurred for convenience, to aid in a more thorough preparation of the case, or for purpose of investigation only, [and, as such,] are not recoverable." DiCecco v. Dillard House, Inc., 149 F.R.D. 239, 214 (N.D. Ga. 1993). Accordingly, the Court finds that the Defendants cannot tax any costs they incurred for Berenguer's deposition to Plaintiff.

In sum, the Court **GRANTS** Plaintiff's Motion as to the costs for the copies of video recordings of any of the depositions and as to the cost of the stenographic copy of Berenguer's deposition. (Doc. 90.)

### C.     Service of Process Costs and PACER Costs

Defendants also seek $660.00 for the costs of serving subpoenas on FIU, Indiana, and Miami and $61.70 in PACER fees. (Doc. 88-1, pp. 4–6.) Plaintiff argues the service costs exceed those allowed by statute and that the statute does not authorize taxing PACER costs at all. (Doc. 90, pp. 10–11.)

With regard to costs for service, the Eleventh Circuit has held that "private process server fees may be taxed pursuant to §§ 1920(1) and 1921." W&O, Inc., 213 F.3d at 624. However, these fees cannot "exceed the statutory fees authorized" for having the United States Marshals

Service effectuate service. Id. The U.S. Marshals Service's rate to serve process is $65 per hour for each item served, plus travel costs and other out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3). Defendants' evidence attached to its Bill of Costs does not provide information as to the time expended by the private process servers to effect service nor does it say anything about travel costs or out-of-pocket expenses. (See doc. 88-2, p. 14.) Accordingly, the Defendants may only tax the statutory minimum—$65—for each of the three subpoenas. See, e.g., James v. Wash Depot Holdings, Inc., 242 F.R.D. 645, 649 (S.D. Fla. 2007) (awarding only the statutory minimum where "[t]he documentation submitted . . . [did] not provide any information as to the time expended to effectuate service by the private process servers or as to travel costs or other out-of-pocket expenses incurred"). Therefore, Defendants may tax a total of $195.00 against Plaintiff for service of process expenses. The Court **GRANTS** Plaintiff's Motion as to the remainder of the costs Defendants seek for service of process. (Doc. 90.)

Finally, the Eleventh Circuit appears to have not yet considered whether PACER fees may be taxed under 28 U.S.C. § 1920. However, several district courts from within this Circuit have held that these fees cannot be taxed. See, e.g., Crossfit, Inc. v. Quinnie, 232 F. Supp. 3d 1295, 1313 (N.D. Ga. 2017) ("PACER fees are also non-recoverable."); Nail, 2020 WL 1670459, at *13 ("Pacer [sic] charges are usually not recoverable since parties to cases can view the documents in their cases without incurring a charge."); MB Reo-FL Church-2, LLC v. Tampa for Christ Church, Inc., No. 8:16-cv-276-T-33AEP, 2018 WL 3008896, at *3 (M.D. Fla. June 15, 2018) (PACER fees are "outside the scope of § 1920"). In their Response Brief, Defendants point to no caselaw to support the taxation of their PACER fees against Plaintiff and, while they maintain that the fees should, given their nature, be recoverable, they state that, "[g]iven the low amount of such fees in this case, [they] do not object to Plaintiff's request to withdraw the $61.70 in question from the

16

Bill of Costs." (Doc. 95, p. 7.) For these reasons, the Court **GRANTS** Plaintiff's Motion as to Defendants' PACER fees. (Doc. 90.)

## II.      Plaintiff's Inability to Pay the Non-Excluded Costs

The Court calculates that Defendants are statutorily authorized to tax Plaintiff up to (but no more than) $3,408.31, which is comprised of the following: $1,273.50 for Plaintiff's stenographic deposition transcript, (doc. 88-2, p. 13); an unknown figure of no more than $1,339.09 for Morris's stenographic deposition transcript, (id. at p. 16); an unknown figure of no more than $480.15 for Markovitz's stenographic deposition transcript, (id. at p. 15); $195.00 for service of process expenses, (see Discussion Section I.C, supra); and $120.57 for uploading files onto Logikcull, (see Discussion Section I.A, supra). Plaintiff asks the Court to "consider [her] financial status in deciding upon costs." (Doc. 90, pp. 13–14.) In Response, Defendants argue that Plaintiff's financial status "does not excuse the operation of 28 U.S.C.§ 1920." (Doc. 95, p. 2.)

"[A] non-prevailing party's financial status is a factor that a district court may, but need not, consider in its award of costs pursuant to Rule 54(d)." Chapman v. AI Transport, 229 F.3d 1012, 1039 (11th Cir. 2000). If the district court does decide to consider the non-prevailing party's financial status, then that party must provide "substantial documentation of a true inability to pay." Id. Here, Plaintiff provides evidence that she has no present income even though she continues to search and apply for jobs. (Doc. 90-2, pp. 2–3.) She has "modest savings" but must make monthly payments for "health insurance, rent, utilities, car payments and insurance, food," and loans, as well as her son's college tuition. (Id. at p. 3.) She does not have a 401(k) and she does not own title to any real property. (Doc. 97-1, p. 2.) It is true that a court, in setting the amount of costs to be awarded, should consider the non-prevailing party's financial situation only in "rare

17

circumstances." Chapman, 229 F.3d at 1039.  However, Plaintiff has provided enough evidence to show that she is unable to pay the full amount that Defendants seek to recover from her.  See, e.g., Mitchell v. Evergreen Transp., LLC, No. 2:12-cv-2461-AKK, 2014 WL 12607792, at *1 (N.D. Ala. June 11, 2014) (court reduced costs because the non-prevailing party was unemployed, had to make several monthly payments, and did not own real property, stock, or bonds).

While a court may reduce the costs that a non-prevailing must pay pursuant to 28 U.S.C.§ 1920, it "may not decline to award any costs at all."  Chapman, 229 F.3d at 1039.  The Eleventh Circuit has provided little guidance for district courts that engage in this cost reduction task besides reminding courts that the cost-shifting provision serves the purpose of deterring non-meritorious claims and that "no fee will provide no deterrence."  Id. (quoting Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 917 (11th Cir. 1982)).  Defendants argue that Plaintiff has previous experience with the federal legal system and as such she "knew the full risks of litigation before filing this action."  (Doc. 95, p. 4.)  However, Plaintiff is represented by experienced lawyers who, after investigating her claim, found a good-faith basis for filing suit.  The Court also notes that while Plaintiff was unsuccessful on her federal claims, the Court declined to exercise supplemental jurisdiction over her state law claims and expressed no view on their merits.  (See doc. 82, pp. 33–34.)  In addition, while the Court recognizes the importance of deterring frivolous litigation, it "also is cognizant of the other side of the loser pays coin; requiring the loser to pay full costs in every circumstance can close access to the courthouse for those with limited means who cannot afford to lose due to a substantial cost award."  Bryant v. Garren, No. 4:18-cv-106 (CDL), 2020 WL 5803460, at *4 (M.D. Ga. Sept. 29, 2020).

Taking into consideration the foregoing, the Court finds that taxing Plaintiff $1,000.00 is appropriate given the totality of the circumstances including Plaintiff's financial situation.  The

Court is aware that Plaintiff does have some "modest savings" and taxing her $1,000.00 is in line with reductions made by other district courts in similar situations. See, e.g., id. at *4 (court reduced costs from $11,121.45 to $1,112.14); Mitchell, 2014 WL 12607792, at *2 (court reduced costs from $1,705.15 to $852.58); Daughtry v. Army Fleet Support, LLC, No. 1:11-cv-153–MHT, 2014 WL 466109, at *4 (court reduced costs from $13,874.99 to $3,000 which was split between 3 indigent defendants). Accordingly, the Court **GRANTS** Plaintiff's Motion to the extent that it reduces costs from up to $3,408.31 to $1,000.00.

### III.     Continuance Pending Resolution of Appeal

Plaintiff also moves the Court to exercise its discretion to grant a continuance on the taxation of costs pending the resolution of her appeal with the Eleventh Circuit. (Doc. 91.) Defendants argue that Plaintiff has not made a sufficient showing to justify a continuance. (Doc. 94.) In support, Defendants cite Mann v. Washington Metropolitan Area Transit Authority. (Id. at p. 2 (citing Mann v. Wash. Metro. Area Transit Auth., 185 F. Supp. 3d 189, 194 (D.D.C. 2016)).) In Mann, the district court, faced with determining whether to stay the taxation of costs pending an appeal, applied a four-factor test taken from the Supreme Court's decision in Nken v. Holder. See Mann, 185 F. Supp. 3d at 194 (citing Nken v. Holder, 556 U.S. 418, 434 (2009)). Nken was not a taxation of costs case but instead concerned the standard for granting a stay in an immigration appeal. Nken, 556 U.S. at 423–24. Nonetheless, the district court used the four-factor test from Nken and ultimately did not grant the stay. Mann, 185 F. Supp. 3d at 196.

After reviewing the caselaw, the Court is unaware of any case where the Eleventh Circuit applied the Nken four-factor test to a party's request for a continuance of the taxation of costs. However, several district courts in this Circuit have, in their discretion, delayed awarding costs until the resolution of an appeal without requiring the party seeking the continuance to meet the

19

requirements of the Nken test.  See, e.g., Estate of Pidcock *ex rel*. Pidcock v. Sunnyland Am., Inc., 726 F. Supp. 1322, 1341 (S.D. Ga. 1989) ("In its discretion, however, the Court may postpone the awarding of costs until the resolution of the post-trial motions or even the resolution of any appeal."); Teagan v. City of McDonough, No. 1:15-cv-00607-ELR, 2018 WL 10455935, at *1 (N.D. Ga. May 9, 2018) ("Rather than resolving the issue of costs during the pendency of the appeal, the Court determines that the ends of justice would be better served by denying the Bill of Costs without prejudice and with leave to re-file after the conclusion of the appeal."); U.S. *ex rel.* Lewis v. Walker, No. 3:06-CV-16 (CDL), 2010 WL 5169085, at *1 (M.D. Ga. Dec. 13, 2010) ("[T]he Court has discretion to postpone the taxation of costs pending the resolution of an appeal.").  The Court finds that a continuance of the taxation of costs is appropriate pending the outcome of Plaintiff's appeal with the Eleventh Circuit.  Therefore, the Court **GRANTS** Plaintiff's Motion for Continuance of Taxation of Costs Statutorily Authorized.  (Doc. 91.)

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Plaintiff Maggie Tsavaris' Motion for Review and Exclusion of Costs and **REDUCES** the total amount of costs taxed to Plaintiff to $1,000.00.  (Doc. 90.)  The Court also **GRANTS** Plaintiff's Motion for Continuance of Taxation of Costs Statutorily Authorized.  (Doc. 91.)  Accordingly, the Court **STAYS** the taxation of costs pending the conclusion of the appeal to the United States Court of Appeals for the Eleventh Circuit.

**SO ORDERED**, this 26th day of January, 2021.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA